**EL PASO INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Laura PABON, Appellee.**

**No. 08–05–00214–CV.**

Court of Appeals of Texas, El Paso.

Aug. 29, 2006.

Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Appellant.

Robert E. Riojas, El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

The El Paso Independent School District appeals from a judgment awarding Laura Pabon lifetime income benefits under the Texas Workers' Compensation Act. Finding the evidence to be both legally and factually sufficient, we affirm.

### FACTUAL SUMMARY

Fifty-five-year-old Laura Pabon was born in Mexico and had only an eighth grade education. Pabon began working for EPISD as a food service worker in 1988. Two years later, she transferred to a full-time custodian position. Pabon consistently received positive employment appraisals from EPISD. In the summer of 2000, Pabon began to experience numbness, pain, and a lack of grip strength in

her hands. She filed a worker's compensation claim with EPISD and began receiving weekly benefits.

Pabon sought medical treatment and her family doctor, Dr. Zafer Haydar, referred her to Dr. Clanton, who diagnosed Pabon with carpal tunnel syndrome of the upper extremities. Dr. Clanton treated her conservatively but when Pabon did not improve with treatment, he referred her to Dr. Alvaro Hernandez, an orthopedic specialist, for consideration of surgery. Dr. Hernandez determined that Pabon had carpal tunnel syndrome and ulnar entrapment to the left elbow, and he performed surgery on both wrists and her left arm. Following the two surgeries in 2001, Dr. Hernandez sent Pabon to a work-hardening program at the Rio Grande Rehabilitation Center. Pabon also underwent a functional capacity evaluation (FCE) to determine her full-body abilities and limitations and she was determined to have the ability to perform only sedentary to light work. The FCE report, dated November 30, 2001, showed that Pabon could perform functional activities such as bending, kneeling, climbing stairs, and reaching forward on a frequent basis. She could use her arm controls frequently, and she could make frequent use of her functional hand activities on both the right and left sides for grasping, fine manipulation, pushing, and pulling. In Dr. Hernandez's opinion, Pabon had some symptomatic improvement, but she continued to have difficulty and was not able to return to the level of work she had done in the past. In December 2001, Dr. Hernandez gave Pabon a whole body impairment rating of 7 percent and released her to return to work with the limitations previously determined by the work-hardening program.

In January of 2002, Pabon spoke with the EPISD director of human resources for support personnel, Barbara Browder, about available positions at EPISD. Browder suggested a paraprofessional position. Dr. Hernandez reviewed the job description and certified that Pabon could perform the physical duties of this position. In order to qualify, Pabon obtained her GED. But she did not satisfy a second job qualification, an employment test for basic reading, writing, and math. Although Pabon took the test three times and improved her score with each effort, she could not pass it.

In mid–2002, the Texas Rehabilitation Commission sent Pabon to an employment agency. Through the employment agency, Pabon obtained a job in the laundry of the Hilton Hotel, but she quit after three days because she could not physically perform the work. She then secured a job at the airport as a custodian but she quit after one month because she could not perform the job well due to her limitations. Pabon next applied with Pinkerton Security but she could not pass the writing test. Since that time, Pabon has looked for work by viewing the want ads in the newspaper but she has not applied to work anywhere else.

On January 20, 2003, Pabon returned to Dr. Hernandez and told him that she could no longer do her housework due to the condition of her hands. Dr. Hernandez wrote in his report that Pabon's difficulty performing activities at home would preclude her from performing work activities and his progress note stated that Pabon was "unable to work" even though Dr. Hernandez admittedly did not perform any additional testing or send her for another FCE. Dr. Hernandez took Pabon completely off work as of that same day. He prescribed paraffin baths for her hands, a muscle relaxant, and an anti-inflammatory medication. In the summer of 2004, Pabon returned to Dr. Hernandez and on August 2, 2004, he released her to work with the limitations of the previous FCE.

At the time of trial, Pabon was taking Ibuprofen four or five times a day. She has continued with the paraffin hand baths and she also uses a TENS unit. Pabon cannot grasp objects and she has constant pain in her hands, elbows, and shoulders. She does only a little housework, which she performs in stages, and is able to do a little cooking. She can drive a car, she can hold a telephone for a limited time, and she can write, "but not a lot." Pabon is also able to brush her teeth and hair and dress herself, but it takes her a long time to perform these tasks.

After the Workers' Compensation Commission determined that Pabon is not entitled to lifetime income benefits, Pabon appealed to the district court. A jury found that a work-place injury had resulted in the total loss of use of both of Pabon's hands at or above the wrist. Based on the jury's verdict, the trial court entered a judgment reversing the decision of the Texas Workers' Compensation Appeals Panel and ordered that Pabon is entitled to recover lifetime income benefits.

## SUFFICIENCY OF THE EVIDENCE

In its sole issue for review, EPISD challenges the legal and factual sufficiency of the evidence supporting the jury's finding that the work-place injury resulted in a total loss of use of both of Pabon's hands at or above the wrists.

### Statutory Requirements for Lifetime Income Benefits

Lifetime income benefits are paid until the death of the employee for loss of both hands at or above the wrist. TEX.LAB. CODE ANN. § 408.161(a)(3)(Vernon 2006). For purposes of Section 408.161(a), the total and permanent loss of use of a body part is the loss of that body part. TEX.LAB. CODE ANN. § 408.161(b). The Texas Labor Code does not define "total and permanent loss of use," but the phrase has been defined by case law as follows: Total loss of use of a member exists when the member no long possesses any substantial utility or when the condition of the member prevents the worker from getting and keeping employment requiring use of the member. *Navarette v. Temple Independent School District,* 706 S.W.2d 308, 310 (Tex.1986); *Galindo v. Old Republic Insurance Co.,* 146 S.W.3d 755, 759 (Tex.App.-El Paso 2004, pet. denied). The trial court included this definition of total loss of use in the court's charge:

### QUESTION NUMBER 1

Do you find from a preponderance of the evidence that the work-place injury suffered by Plaintiff resulted in total loss of use of both hands at or above the wrists?

Answer 'Yes' or 'No.'

'Total loss of use' of a member exists whenever the member no long possesses any substantial utility or when the condition of the member prevents the worker from getting and keeping employment requiring use of the member.

The jury answered "yes" to this question.

### Legal Sufficiency

EPISD first argues that the evidence is legally insufficient because the undisputed contrary evidence conclusively established that Pabon had the physical ability to perform the paraprofessional position and the only reason she could not hold the job was because she could not pass the written employment test, not because of the physical condition of her hands. Citing *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005), EPISD contends that we must not disregard the contrary evidence in our legal sufficiency review.

■ An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810, *citing* Robert W. Calvert, "No Evidence" & "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 361, 362–63 (1960). EPISD's argument falls within the fourth circumstance which necessarily precludes us from automatically disregarding contrary evidence in its legal sufficiency review. *See City of Keller*, 168 S.W.3d at 810–11 (stating that contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth circumstances).

In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish so long as more than one inference is possible. *Id.* at 821. But if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.* We are also mindful that jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the jury to resolve such conflicts. *Id.* at 820. In every circumstance in which reasonable jurors could resolve conflicting evidence either way, the reviewing court must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id.* at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id.* The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

There are two aspects to the definition of total loss of use: (1) whether Pabon's hands no longer possess any substantial utility or (2) whether the condition of Pabon's hands prevents her from getting and keeping employment requiring use of her hands. EPISD's argument focuses primarily on the second part of the definition, but we will consider both parts in our review.

■ We consider first whether the contrary evidence conclusively establishes that Pabon's hands no longer possess any substantial utility. EPISD is correct that the FCE report from November 30, 2001 showed that Pabon had the ability to work at the light to sedentary level and she could perform her functional activities on a frequent basis, she could use her arm controls frequently, and she could make frequent use of her functional hand activities on both the right and left sides for grasping, fine manipulation, and pushing and pulling. Dr. Hernandez gave particular credence to the FCE, stating that it was much more accurate than anything that he could write. Additionally, Dr. Hernandez determined in January 2002 that Pabon could physically perform the duties of the paraprofessional position. She did not qualify for that position, however, because she could not pass the written employment test. We understand EPISD to argue that the jury could draw only one inference from the foregoing evidence: Pabon's

hands possessed substantial utility. This argument fails to account for the other evidence before the jury. In 2002, Pabon's condition had deteriorated to the point that she could not perform housework. Consequently, Dr. Hernandez took her completely off of work until August 2004 when he released her to work with the limitations of the previous FCE. At the time of trial in February 2005, Pabon could not grasp objects with her hands and she has constant pain in her hands, elbows, and shoulders. Although she can drive a car, she has limited ability to perform other ordinary tasks such as housework, cooking, using a telephone, and writing. From all of the evidence, reasonable and fair-minded jurors could draw more than one inference, including that Pabon's hands no longer possessed any substantial utility. Consequently, we reject EPISD's argument that the evidence was susceptible to only one inference and that it conclusively established that Pabon's hands had some substantial utility.

We next consider whether the contrary evidence conclusively established that the condition of Pabon's hands did not prevent her from getting and keeping employment requiring use of her hands. There is evidence that in 2002, Pabon could perform the duties of the paraprofessional position, and the only reason she did not qualify for the job was because she could not pass the written employment test. On the other hand, there is evidence from which reasonable and fair-minded jurors could conclude that Pabon's condition subsequently deteriorated and the condition of her hands prevented her from getting and keeping employment for which she was qualified. Thus, we are unable to conclude that the evidence permitted only one inference. Instead, we find that the contrary evidence did not conclusively establish the opposite of the vital fact, namely, that the condition of Pabon's hands prevented her getting and keeping employment. Stated in the terms of *City of Keller v. Wilson,* the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. For these reasons, the evidence is legally sufficient.

*Factual Sufficiency*

EPISD raises the same arguments in the context of factual sufficiency review. When reviewing a challenge to the factual sufficiency of the evidence, we must consider and weigh all of the evidence in the record, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We will set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 407. In conducting this review, we do not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.*

As we have noted, the jury heard conflicting evidence that Pabon's hands no longer possessed any substantial utility or that their condition prevented her from getting and keeping employment requiring use of her hands. We have already determined that reasonable and fair-minded jurors could draw more than one inference from all of the evidence. We are unable to conclude that the jury's resolution of the conflicts in the evidence and its verdict based on competing inferences is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Because the evidence is also factually sufficient, we overrule the point sole and affirm the judgment of the trial court.