COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CAROL G. SIMPSON, | § | No. 08-06-00124-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 168th District Court |
| | § | |
| STATE OFFICE OF RISK | | of El Paso County, Texas |
| MANAGEMENT, | § | |
| | | (TC # 2003-4549) |
| Appellee. | § | |

## O P I N I O N

Carol G. Simpson appeals from a judgment rendered in favor of the State Office of Risk Management (SORM) on her workers' compensation claim. We reverse and render.

## FACTUAL SUMMARY

Simpson began working for the Texas Workforce Commission (TWC) in 1987. TWC is the state agency responsible for handling unemployment claims for the state of Texas. Simpson was initially employed as an employment interviewer, but in 1998 she transferred to the El Paso telecenter which is one of six TWC telecenters in Texas. Unemployed persons can call the center to file an unemployment claim and obtain a determination as to whether they are entitled to unemployment benefits. In her new job as an adjudicator, Simpson's duties required her to type on a computer keyboard for a substantial portion of each work day, ranging from 60 to 95 percent. Around September 1, 2001, Simpson began experiencing pain in her shoulders, arms, wrists, and thumbs. Because she had been advised by her employer to report any injury, she filled out a document entitled, "Employee's Report of Injury." Simpson had previously been treated for neck

problems beginning in 1992, and she had been diagnosed with osteoarthritis, osteoarthrosis, and osteoporosis. In 2002, Simpson developed a trigger thumb. Dr. Robert Bell, a board certified orthopedic surgeon, performed surgery on October 11, 2002. The surgery relieved the triggering, but Simpson began to experience pain in the thumb and Dr. Bell diagnosed her with tenosynovitis on November 6, 2002. He recommended anti-inflammatory medication and a protective splint. One month later, Simpson had improved. Following an examination on February 5, 2003, Dr. Bell determined that Simpson had synovitis of the thumb joint and tenosynovitis. He ordered an arthritis panel to rule out inflammatory arthritis.

On February 19, 2003, Simpson experienced intense pain in her hand and wrist while typing on the computer keyboard. She saw Dr. Bell the following day, complaining of pain in the forearm to the elbow and down to the wrist. The arthritis panel ordered at the previous office visit was normal. Dr. Bell prescribed a splint and ordered physical therapy. He also recommended that Simpson get an ergonomic keyboard. That same day, Simpson reported her injury as work-related and she subsequently filed a claim for worker's compensation benefits. On April 16, 2003, Simpson returned to Dr. Bell and he determined that she had work-related tenosynovitis of the hand. He recommended an ergonomic mouse in addition to the keyboard. On July 16, 2003, Dr. Bell diagnosed Simpson with carpal tunnel syndrome in addition to tenosynovitis of the hand and wrist. At this time, Simpson was experiencing mild triggering in her fingers. Dr. Bell stated in one of his written reports that the carpal tunnel syndrome and trigger fingers had resulted from tenosynovitis or tendonitis. An EMG/NCV study performed on September 22, 2003 revealed that Simpson had borderline carpal tunnel syndrome and mild to moderate chronic cubital tunnel syndrome. Consequently, Dr. Bell determined that he would treat Simpson with anti-inflammatory medication, a long arm splint and rest with a conservative protocol. He subsequently ordered a work ergonomic

evaluation by an occupational therapist who determined, among other things, that Simpson had marked instability of the MP joint of both thumbs.

Following a contested case hearing, the Workers' Compensation hearing officer determined that Simpson had suffered a compensable injury with a February 19, 2003 date of injury and that she timely notified her employer. SORM, which acts as the insurer for the State of Texas, appealed. The Texas Workers' Compensation Appeals Panel issued an opinion affirming the decision of the contested case hearing officer. SORM then appealed to the district court and the case was tried to a jury. The jury found that SORM had proven by a preponderance of the evidence that Simpson had not sustained an occupational disease in the form of a repetitive trauma injury in the course and scope of employment. Accordingly, the trial court reversed the decision of the TWCC Appeals Panel and rendered judgment in favor of SORM.

## SUFFICIENCY OF THE EVIDENCE

In her sole issue for review, Simpson contends that the evidence is legally and factually insufficient to support the jury's finding that she did not sustain a compensable repetitive trauma injury.

### Legal Sufficiency Standard of Review

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. *Serrano v. Union Planters Bank*, *N.A.*, 162 S.W.3d 576, 579 (Tex.App.--El Paso 2004, pet. denied). There are two separate "no evidence" claims. *Id*. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." *Id*. When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *Id*.; *In*

*re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex.App.--El Paso 1999, no pet.). In this case, SORM had the burden to prove that Simpson did not have a repetitive trauma injury.

The Labor Code defines "occupational disease" to mean a disease arising out of and in the course of employment that causes damage or harm to the physical structure of the body, including a repetitive trauma injury. TEX.LABOR CODE ANN. § 401.011(34)(Vernon Supp. 2007). The term does not include an ordinary disease of life to which the general public is exposed outside of employment, unless that disease is an incident to a compensable injury or occupational disease. *Id.* "Repetitive trauma injury" means damage or harm to the physical structure of the body occurring as the result of repetitious, physically traumatic activities that occur over time and arise out of and in the course and scope of employment. TEX.LABOR CODE ANN. § 401.011(36).

The charge instructed the jury consistent with these definitions and the jury found that SORM established by a preponderance of the evidence that Simpson did not sustain an occupational disease in the form of a repetitive trauma injury in the course and scope of her employment.

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). Simpson argues that there is no evidence that she did not have an injury resulting from repetitious, physically traumatic activities occurring over time. She specifically takes issue with SORM's expert witness who testified that carpal tunnel syndrome does not result from typing because she did not limit her claim to carpal tunnel syndrome and the jury was not asked to find whether she sustained carpal

tunnel syndrome. We construe these arguments as falling within the first category. Simpson also asserts that the evidence "overwhelmingly" established she sustained a repetitive trauma injury, namely, tenosynovitis and tendonitis, as a result of typing on a computer keyboard for the majority of each work day. This argument falls within the fourth category. In reviewing Simpson's sufficiency challenges falling under the first and fourth categories, we are precluded from automatically disregarding contrary evidence. *See City of Keller*, 168 S.W.3d at 810-11 (stating that contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth categories).

In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller,* 168 S.W.3d at 822. Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id*. at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id*. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id*. at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id*. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id*. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

*Legal Sufficiency Analysis*

Simpson's claim is limited to the problems she has with her hands and wrists resulting from repetitive typing on a computer keyboard. Dr. Bell determined that she had tenosynovitis[1] in her hands as the result of repetitive typing. The tenosynovial sheath surrounds tendons and makes fluid for the tendons to glide. Under one theory, repetitive trauma, such as too much typing, leads to swelling and inflammation of the tenosynovial sheath, which is called tenosynovitis. The swelling and inflammation of the tenosynovial sheath causes trigger fingers. It can also cause nerve entrapment at the wrist because it takes up too much space as it enters into the wrist at the carpal tunnel. Tenosynovitis is a condition which waxes and wanes depending on a person's level of activity. The electromyographic study (EMG) and nerve conduction velocity (NCV) testing revealed that Simpson had mild carpal tunnel syndrome and mild to moderate cubital tunnel syndrome.

Dr. Bell testified that the medical literature on repetitive strain disorders or cumulative trauma disorders indicates that repetitious activity, such as typing, can lead to inflammation of the tendon sheath, which can in turn lead to the separate medical conditions of trigger fingers and carpal tunnel. Dr. Bell ruled out other causes of Simpson's problems with her hands and wrists, including injury to the neck, osteoarthritis, rheumatoid arthritis, gout, lupus, and other arthropathies. During cross-examination, Dr. Bell testified that there has been an ongoing debate in the medical community as to whether heavy keyboard activity causes carpal tunnel syndrome. There are studies showing that it does not, but other studies support the theory that such repetitive activity causes carpal tunnel syndrome. In Dr. Bell's experience, he has seen a much higher incidence of carpal tunnel and wrist and hand pain in patients who perform heavy repetitive activity than in patients who do not engage in that type of activity.

---

[1] According to Dr. Bell, tenosynovitis is sometimes referred to as tendonitis.

Dr. Martin Roth Steiner, a board certified neurologist, testified as an expert witness on behalf of SORM. He based his testimony on a review of Simpson's medical records. He noted that Simpson had a thirty-year history of aches and pains. He reviewed the record of the EMG/NCV testing performed in 2003 and found that it was normal. He did not find any documentation of clinical factors, such as the patient complaining of numbness and tingling in the fingers, decreased pinprick sensitivity in the fingers, or thenar atrophy, that would permit a diagnosis of carpal tunnel syndrome. Even assuming that Simpson had carpal tunnel syndrome, it was Dr. Steiner's opinion there is no connection between repetitive typing and carpal tunnel syndrome. He based his opinion on a paper from the Mayo Clinic and another published in the Journal of the American Medical Association indicating that computer use is not a cause of carpal tunnel syndrome. Dr. Steiner's research of online resources did not yield any studies showing a connection between typing and tendonitis. Carpal tunnel syndrome develops spontaneously in about 5 percent of the population because of aging or due to obesity, diabetes, or low thyroid function. It is also seen in patients who have a specific trauma to the wrist and it is sometimes associated with women in the later stages of pregnancy. Dr. Steiner testified that Dr. Bell did not evaluate other possible causes of Simpson's carpal tunnel syndrome, including a thyroid condition. In Dr. Steiner's opinion, Simpson's work did not cause her to sustain an injury, and he attributed her symptoms to the normal aches and pains of life.

A portion of Dr. Steiner's testimony is inconsistent with Simpson's medical records. First, Dr. Steiner stated that the EMG/NCV testing was normal. But Dr. Bell and Dr. Michael Boone, who performed the electrodiagnostic studies, both concluded that the study showed borderline carpal tunnel syndrome and mild to moderate chronic cubital tunnel syndrome. Second, Dr. Steiner testified that the medical records did not show that Simpson had decreased pinprick sensation in the

fingers or other signs that would permit a clinical diagnosis of carpal tunnel syndrome. Yet Dr. Bell reported on different dates following examination of Simpson in 2003 that she had decreased pinprick sensitivity and positive Phalen's and Tinel's signs over the median and ulnar nerves. Third, Dr. Steiner testified that Dr. Bell did not consider whether there may have been non-work-related causes for Simpson's symptoms. But Dr. Bell ruled out several non-work-related causes, including osteoarthritis, rheumatoid arthritis, other arthropathies, thyroid conditions, diabetes, gout, and lupus.

Certainly there is conflicting evidence whether Simpson suffered from carpal tunnel syndrome. Nevertheless, Dr. Steiner testified that even if Simpson had carpal tunnel syndrome injury, it was not caused by repetitive typing. He based his opinion on studies in medical literature. If Simpson had limited her claim to carpal tunnel syndrome, we would conclude our legal sufficiency analysis and find the evidence legally sufficient to support the jury's finding. Dr. Bell, however, diagnosed Simpson with tenosynovitis or tendonitis of the hands which is caused by repetitive typing. This inflammation had caused Simpson to experience triggering in her fingers. Dr. Steiner did not address whether Simpson had tendonitis or tenosynovitis, or whether it is caused by repetitive typing. He testified only that he found no references in his online research to studies showing a connection between tendonitis and typing. He did not affirmatively testify that tendonitis is not caused by repetitive work activity such as typing. Under these facts, the evidence admitted at trial does not permit reasonable and fair-minded jurors to reach the verdict under review. Therefore, we find the evidence legally insufficient to support the jury's finding that SORM proved by a preponderance of the evidence that Simpson did not sustain a repetitive trauma injury in the course and scope of employment. We sustain Simpson's sole point, reverse the trial court's judgment, and render judgment affirming the decision of the TWCC Appeals Panel.

May 22, 2008

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
(Carr, J., not participating)