COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

HECTOR ESCALANTE, No. 08-09-00228-CV

§

Appellant, Appeal from

§

v. 168th District Court

§

STATE OFFICE OF RISK of El Paso County, Texas
MANAGEMENT, §

(TC # 2006-647)

Appellee. §

**O P I N I O N**

Hector Escalante appeals a take-nothing judgment based on a jury verdict finding that he was not entitled to supplemental income benefits (SIBs) for any of the six quarters in dispute. On appeal, Escalante contends that the evidence is legally and factually insufficient to support the jury's verdict. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Hector Escalante was employed as a regional systems specialist with the Texas Department of Human Services (DHS). While employed with DHS, Escalante suffered injuries from two separate work-related incidents. The first injury was sustained on May 13, 1999 while he was lifting a file server. The second injury occurred in a motor vehicle accident on August 9, 2000.

This is not the first time the parties are before the court. In 2005, we heard a previous worker's compensation claim filed by Escalante based upon the August 9, 2000 auto accident. SORM denied the claim and a contested hearing, followed by a trial in district court, ensued. *See State Office of Risk Management v. Escalante*, 162 S.W.3d 619 (Tex.App.--El Paso 2005, pet.

dism'd). The jury had found that: (1) Escalante sustained compensable injuries to his lumbar spine and in the form of cervical root lesions as a result of the car accident; (2) injuries from that accident, occurring in course of his employment, were the proximate cause for his disability; and (3) the accident caused the disability suffered from February 23, 2001 to April 22, 2002. We found the evidence to be legally sufficient to support the jury's verdict. *See Escalante*, 162 S.W.3d 625-26. The judgment from that trial was entered into evidence in the case at bar as Plaintiff's Exhibit 1.

At issue in this case are the supplemental income benefit (SIBs) applications Escalante filed for quarters 10, 11, 13, 14, 15, and 16. On each of the six applications, Escalante claimed the May 13, 1999 file server incident as the cause of the injuries. SIBs are benefits paid to employees who suffer an on the job compensable injury which renders them incapable to return to work in the same capacity as before their injury. *See* TEX.LAB.CODE ANN. § 401.011 (5), (10), (25), (31)(West Supp. 2010).[1] Benefits are applied for and awarded by quarter, each quarter having a specified "qualifying

---

[1] Under TEX.LAB.CODE ANN. § 401.011 (5), (10), (25), and (31), the terms benefit, compensable injury, income benefit, and medical benefit are defined as follows:

(5) 'Benefit' means a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury.

.    .    .

(10) 'Compensable Injury' means an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle.

.    .    .

(25) 'Income Benefit' means a payment made to an employee for a compensable injury. The term does not include a medical benefit, death benefit, or burial benefit.

.    .    .

(31) 'Medical benefit' means payment for health care reasonably required by the nature of a compensable injury and intended to: (A) cure or relieve the effects naturally resulting from the compensable injury, including reasonable expenses incurred by the employee for necessary treatment to cure and relieve the employee from the effects of an occupational disease before and after the employee knew or should have known the nature of the disability and its relationship to the employment; (B) promote recovery; or (c) enhance the ability of the employee to return to or retain employment.

period." *See* TEX.LAB.CODE ANN. § 408.143 (West 2006). The quarters at issue, and their corresponding qualifying periods, are as follows:

Quarter 10:    June 7, 2005 through September 5, 2005
               (Qualifying Period February 23, 2005 through May 24, 2005)

Quarter 11:    September 6, 2005 through December 5, 2005
               (Qualifying Period May 25, 2005 through August 24, 2005)

Quarter 13:    March 7, 2006 through June 5, 2006
               (Qualifying Period November 23, 2005 through February 21, 2006)

Quarter 14:    June 6, 2006 through September 4, 2006
               (Qualifying Period February 22, 2006 through May 23, 2006)

Quarter 15:    September 5, 2006 through December 4, 2006
               (Qualifying Period May 24, 2006 through August 22, 2006)

Quarter 16:    December 5, 2006 through March 5, 2007
               (Qualifying Period August 23, 2006 through November 21, 2006)

At a series of contested hearings, the Texas Department of Insurance-Division of Workers' Compensation found that Escalante was entitled to SIBs for all of the quarters at issue. The decisions of the hearing officer were affirmed by the appeals panel and an order was issued that Escalante was entitled to SIBs for quarters 10, 11, 13, 14, 15, and 16. SORM filed suit in district court for a review of the Department's decision as to all six quarters. *See* TEX.LAB.CODE ANN. § 410.301(a)(West 2006).

At trial, Escalante testified that on May 13, 1999, while lifting a file server as part of his work duties, he felt "an electric shock" down his spine. He sustained injuries to his back and his left leg. He did not see a doctor right away and continued to work until first seeing Dr. Boone for treatment.[2] He also took a leave of absence due to the May 1999 injury which lasted three to four weeks. Escalante was placed on "maximum medical improvement" and assigned an impairment rating of

---

[2] Dr. Boone treated Escalante for his injuries relating to both incidents.

16 percent by the Department's designated doctor.[3] He was later given a full medical release and he returned to full duty work prior to the second incident. Upon his return to employment, Escalante held the same job title as before the injury and he performed all the essential functions associated with his job, just as he had done before the incident.

The second incident occurred on August 9, 2000, when Escalante was involved in a motor vehicle accident while on the job.[4] He refused medical treatment at the scene because he was already scheduled for a follow-up appointment with Dr. Boone relating to his May 1999 injuries. Although Dr. Boone did not testify, several of his letters and reports were admitted into evidence at trial.

The jury was instructed that: (1) on May 13, 1999, Escalante sustained a compensable injury to his lower back while an employee of DHS; (2) he received an impairment rating of 15 percent or higher; (3) he did not commute any portion of the impairment income benefits for the impairment rating he received for this injury; and (4) he did not earn any wages during any of the qualifying periods for the six compensable quarters in dispute. The jury was also told: (1) it was SORM's burden to prove by a preponderance of the evidence that Escalante was not entitled to SIBs; (2) that Escalante was not entitled to SIBs if he did not, in good faith, satisfactorily participate in a vocational rehabilitation program; and (3) that Escalante was entitled to SIBs if he earned less than 80 percent of his weekly wage as a direct result of the impairment from the May 13, 1999 injury. Escalante has not complained of charge error in this appeal.

The jury found in favor of SORM and the trial court entered judgment in accordance with the verdict. In his sole issue on appeal, Escalante claims the evidence is both legally and factually

---

[3] An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from the current compensable injury." 28 TEX.ADMIN.CODE § 130.1(c)(1)(West 2011)(Impairment Income Benefits).

[4] Between the May 13, 1999 incident and the August 9, 2000 motor vehicle accident, Escalante never ceased to be an employee of DHS, all the while continuing his work in the same line of hardware/software.

insufficient to support the jury's verdict because the overwhelming evidence demonstrates that his unemployment was a "direct result" of his May 1999 injury, and that he made a "good faith effort" to participate in a vocational rehabilitation program.

## STANDARD OF REVIEW

On appeal, a legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.) Escalante's argument is that the overwhelming evidence established that his unemployment was a "direct result" of his May 13, 1999 injury. We construe this argument as falling under the fourth category. *See id.* Therefore, in review of Escalante's legal sufficiency challenge we are precluded from disregarding contrary evidence. *See Simpson v. State Office of Risk Management*, 276 S.W.3d 39, 43 (Tex.App.--El Paso 2008, pet. denied), *citing City of Keller*, 168 S.W.3d at 810-11 (stating that contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth categories). That said, the jurors are the sole judges of the weight and credibility to give to witness testimony and if the evidence at trial would allow reasonable, fair-minded jurors to differ in their conclusions then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 819, 822; *Pabon*, 214 S.W.3d at 41. So long as evidence falls within the zone of reasonable disagreement, a reviewing court cannot substitute its own judgment for that of the trier of fact. *City of Keller*, 168 S.W.3d at 821-22; *Pabon*, 214 S.W.3d at 41. However, if the evidence allows for only one inference neither the jurors, nor the reviewing court, may disregard it. *Id.*

When the appellant challenges the factual sufficiency of an adverse finding on which the other party had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Texas Property & Casualty Guaranty Association v. National American Insurance Company*, 208 S.W.3d 523, 542 (Tex.App.--Austin 2006, pet. denied). We will consider, weigh, and examine all of the evidence in the record, both in support of, and contrary to, the finding. *Insurance Network of Texas v. Kloesel*, 266 S.W.3d 456, 470 (Tex.App.--Corpus Christi 2008, pet. denied). The district court's finding will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id*.

## APPLICABLE LAW

Under the Texas Labor Code, a worker is entitled to receive SIBs if the following requirements are met: (1) the worker has an impairment rating of 15 percent or higher; (2) the worker has not returned to work or has returned to work earning less than 80 percent of the employee's average weekly wage as a direct result of the employees impairment; (3) the worker has not elected to commute a portion of the impairment income benefit under Section 408.128; and (4) the worker has attempted in good faith to obtain employment. TEX.LAB.CODE ANN. § 408.142 (West 2006).[5]

Rule 130.102(b) of the Texas Administrative Code provides:

> An injured employee who has an impairment rating of 15 % or greater, who has not commuted any impairment income benefits . . . is eligible to receive supplemental income benefits if, during the qualifying period the employee:

---

[5] Effective September 1, 2005, Section 408.142 now provides that an employee may be entitled to SIBs if, at the time of the expiration of his income benefits, the employee (4) has complied with the requirements under Section 408.1415. *See* TEX.LAB.CODE ANN. § 408.142. The requirements in Section 408.1415 clarify the meaning of "attempted in good faith." To be eligible to receive SIBs a party must show: (1) active participation in a vocational rehabilitation program conducted by the Department of Assistive and Rehabilitative Services or a private vocational rehabilitation provider; (2) active participation in work search efforts conducted through the Texas Workforce Commission; or (3) active work search efforts documented by job applications submitted by the recipient. *See id*. § 408.1415.

(1) has earned less than 80 % of the injured employee's average weekly wage as a direct result of the impairment from the compensable injury; and

(2) has demonstrated an active effort to obtain employment in accordance with Labor Code § 408.1415 of this section.

28 TEX.ADMIN.CODE § 130.102(b).

The parties stipulated that Escalante sustained a compensable injury on May 13, 1999; that he was assigned an impairment rating greater than 15 percent for that injury; and that he did not commute his income benefits. Therefore, the issue sufficiency of the evidence to satisfy both prongs of Rule 130.102(b) which correspond to an attack on prongs two and four of Section 408.142. *See* 28 TEX.ADMIN.CODE § 130.102(b); TEX.LAB.CODE ANN. § 408.142. We address the arguments under each prong separately.

**DIRECT RESULT**

The first prong of Rule 130.102(b) and the second prong of Section 408.142, require that to receive SIBs, the complainant's unemployment must be a "direct result" of his work related injury. "Direct Result" as defined in the jury charge means:

> [A]t least one of the causes of the injured employee's unemployment was the impairment resulting from the compensable injury. An injured employee does not have to show that his compensable injury was the 'sole cause' of the unemployment.

> A Direct Result is sufficiently proven by a preponderance of evidence that the employee suffered a serious injury with lasting effects that could not reasonably perform the type of work being done at the time of the injury.

At trial, Escalante testified that Dr. Boone was the treating physician for his May 1999 injury as well as his August 2000 injury. Several medical reports and letters written by Dr. Boone between December 2002 and April 2003, and between May 2005 and November 2005 were admitted into evidence. Plaintiff's Exhibits 7 and 13 consist of a letter and a report dated December 27, 2002, which addressed Dr. Boone's opinion as to the cause of Escalante's condition, relative to when he

returned to work. In identical language the letter and report stated in part:

> I would like to go through the series of events.
>
> The patient had a work related injury on 5-13-1999. He had returned to regular duty by April of 2000. On August 9, 2000, he had a motor vehicle accident which was work related. He saw me for that injury on August 16, 2000. He continued regular duty, but by November 1, 2000, he was having such intense symptoms that he was taken off of work by me. This was felt to be medically reasonable and necessary. *He continues to be off for symptoms related to the August 9, 2000, injury.* These injuries included cervical, lumbar, left shoulder, and right ocular injury, apparently a traumatic cataract. The patient continues to need treatment for this. [Emphasis added.]

In a subsequent report dated April 10, 2003, Dr. Boone wrote, "I think all ensuing injuries will probably be due to the 8/9/2000 date of injury." In contrast, three identical letters introduced as part of Defense Exhibit 1, read in part, "Mr. Hector Escalante has been seen by me for several years in regards to a work-related injury on May 13, 1999. He continues to be symptomatic."

Escalante contends that, as the party with the burden of proof at trial, SORM had to prove either that: (1) the August 9, 2000 injury was the sole cause of his unemployment; or (2) the May 13, 1999 injury was in absolutely no way a contributing factor to his unemployment for the qualifying periods. He complains that no evidence established that the August 9, 2000 injury was the sole cause of his unemployment. He further asserts that, so long as his inability to obtain and retain employment was at least a combination of both injuries, then the direct-result prong of the test is met. He argues that while there was some evidence presented that he had lasting effects from his August 9, 2000 injury, the overwhelming medical evidence submitted showed the unemployment resulted from the May 1999 injury: "Although SORM presented evidence that Escalante sustained a subsequent injury in 2000, the only relevant medical evidence for the time periods in question was that his unemployment was a direct result of the May 13, 1999 compensable injury."

The medical reports, letters, and testimony presented the jury with conflicting evidence from

which the jury could have reasonably drawn more than one inference. Therefore, we must consider whether reasonable and fair-minded jurors could, from all the evidence, reach the inference that Escalante's unemployment was a direct result of his May 13, 1999 injury. For example, compare the language in Dr. Boone's letters opining that Escalante, "continues to be off for symptoms related to the August 9, 2000, injury," and "I think all ensuing injuries will probably be due to the 8/9/2000 date of injury," with the letters advising that Escalante, "has been seen by me for several years in regard to a work-related injury on May 13, 1999. He continues to be symptomatic. He remains off work because of this injury."

There was also testimony that prior to the August 9, 2000 accident, Escalante had been given a full medical release by his doctor and returned to work in the same capacity as before his May 13, 1999 injury. Additionally, the jury was presented with, and entitled to consider, the judgment from the previous case, which held the August 2000 accident as the producing cause of the injuries.

We conclude that the evidence is legally sufficient to support the jury's finding that Escalante's unemployment was not the "direct result" of his May 1999 injury. And while there were obvious contradictions in the medical reports and letters, as well as in Escalante's own testimony, the jury's conclusion is not so unsupported by factually sufficient evidence as to require it be abandoned. Thus, in reviewing all of the evidence in a neutral light, we cannot conclude that upholding the verdict would be so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Kloesel*, 266 S.W.3d at 470.

### GOOD FAITH EFFORT

The jury charge repeated the language found in Rule 130.102(b) and stated that to be eligible to receive SIBs an employee must make a "good faith effort to obtain employment commensurate with the employee's ability to work" which was defined as enrollment and satisfactory participation

in full time vocational rehabilitation sponsored by the Texas Department of Assistive and Rehabilitative Services (DARS) during the qualifying period. *See* 28 TEX.ADMIN.CODE § 130.102(b).

In February 2003, Escalante sought the help of the then Texas Rehabilitation Commission, now DARS, to retrain him. Pursuant to this retraining program, DARS and Escalante entered into an individualized plan of employment (IPE). The IPE was to be in effect from February 18, 2003 through December 30, 2008. Escalante agreed to attend the University of Texas at El Paso and pursue a bachelor's degree in computer information systems. He also had plans to become a teacher. With the exception of the summer sessions, Escalante attended UTEP between February 2005 and November 2006.

The IPE agreement and Escalante's college transcript were entered into evidence as Plaintiff's Exhibit 9. The language of the IPE required that Escalante "[m]aintain at least 2.0 GPA and the 12 credit hours." However, the transcript and Escalante's testimony established the following with respect to the quarters at issue:

• Quarter 10 covered the period from February 23, 2005 through May 24, 2005 and encompassed the 2005 spring semester. Escalante earned nine hours credit.

• Quarter 13 covered the period from November 23, 2005 through February 21, 2006 and encompassed the end of the Fall 2005 semester and the beginning of the Spring 2006 semester. Escalante was enrolled for twelve hours in the fall but only earned credit for six hours because he withdrew from two classes. During the spring semester, Escalante enrolled for twelve hours but only completed nine. He earned a GPA of 1.25 for the semester.

• Quarter 14 covered the period from February 22, 2006 through May 23, 2006, and encompassed the Spring 2006 semester discussed above.

• Quarter 16 covered the period from August 23, 2006 through November 21, 2006 and corresponded with the Fall 2006 semester, during which he earned nine hours credit with a GPA of 2.66.

The qualifying time period for Quarters 11 and 15 overlapped with summer sessions such that grades

and credit hours were not discussed in detail at trial.

Escalante countered this evidence by claiming that only his counselor, Darlene Mann, could determine whether he was in compliance with the IPE. He testified that his cumulative GPA never fell below a 2.0. He also testified that as the IPE was explained to him, he was to attempt twelve hours a semester and maintain an overall, cumulative GPA of a 2.0 or above. However, the words "attempt" or "cumulative" do not appear in the IPE agreement.

As his counselor, Mann submitted several letters to the workers' compensation board regarding Escalante's progress and compliance with the program. Each of these letters states that Escalante was satisfactorily in compliance with his vocational rehabilitation program. On cross examination, the following colloquy between SORM's attorney and Mann occurred:

> Q: Okay. You wrote all these letters, put the phrase, 'satisfactory compliance,' but that didn't necessarily mean that he was actually meeting that IPE as defined in Plaintiff's Number 8, correct?

> A: In some cases, yes.

Escalante contends that the jury was confused. He argues that its verdict "exemplifies the fact they were convinced [he] needed to earn at least 12 hours of credit and earn at least a 2.0 GPA for each semester he attended at UTEP. This is the wrong way to look at the case." But the jury was instructed to decide whether Escalante had made a "good faith effort" to satisfactorily participate in his vocational rehabilitation program. It was presented with conflicting evidence which they resolved against him. For example, the IPE agreement required Escalante to maintain "a 2.0 GPA and 12 credit hours *each* semester" [emphasis added]. Escalante and Mann both testified that the "2.0 GPA requirement" was not per semester but a cumulative GPA requirement, and that the "12 credit hours each semester," only applied to the hours attempted, not the hours earned. Mann's own testimony as to whether Escalante was in compliance contradicts her own letters to the workers'

compensation board. The jury heard conflicting evidence as to Escalante's grades and participation in the rehabilitation program which could have led reasonable, fair-minded jurors toward either verdict. Because there is more than a scintilla of evidence presented to supported the verdict, the evidence is legally sufficient. *Simpson*, 276 S.W.3d at 43; *City of Keller*, 168 S.W.3d at 822.

We also overrule the factual sufficiency challenge. Appellant has not demonstrated that there is insufficient evidence to support the jury's verdict or that the overwhelming amount of evidence contradicts the jury's verdict such that, to uphold the verdict would be clearly wrong and manifestly unjust. *See Kloesel*, 266 S.W.3d at 470. We overrule the sole point and affirm the judgment of the trial court.

August 24, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment