

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ELLEN E. RHEY D/B/A RHEY PROPERTIES, | § | |
| Appellant, | § | No. 08-11-00069-CV |
| v. | § | Appeal from |
| CAROLYNE REDIC AND JOHN E. REDIC, INDIVIDUALLY AND | § | 384th District Court |
| D/B/A VICTORY WARRIORS DRILL AND DANCE ACADEMY, AND | § | of El Paso County, Texas |
| VICTORY CHAPEL MINISTRIES, | § | (TC # 2010-1275) |
| Appellees. | § | |

## **O P I N I O N**

Ellen Rhey d/b/a Rhey Properties appeals from a money judgment in favor of Carolyn Redic and John Redic, Individually and d/b/a Victory Warriors Drill and Dance Academy and d/b/a Victory Chapel Ministries. In portions of the record, Victory Chapel Ministries is erroneously referred to as Victory Chapel Industries. The court's charge and the jury's verdict reflect the correct name, Victory Chapel Ministries, but the judgment uses the incorrect name. We therefore reform the judgment to reflect the correct assumed name, Victory Chapel Ministries and affirm the judgment as reformed.

## **FACTUAL SUMMARY**

At the time of trial, Carolyne and John Redic had been married for forty-four years. The

Redics lived in El Paso for a while when John was in the military and when he retired in 1978, they decided to return to El Paso to begin a ministry. John was ordained in 1979 and Carolyne became ordained in 2000. John became the pastor of Second Baptist Church in 1979 where he continued to work until 1988. During that time, Carolyne worked as a youth minister in south El Paso. In 1988, the Redics and a group of people began Victory Chapel Ministry. Carolyne described it as an outreach ministry and explained that although they had a congregation, the focus of the ministry was to address the needs of the community known as the "Devil's Triangle" located in Northeast El Paso. Victory Chapel has Sunday services and has several different ministries including a women's ministry, drug and alcohol ministry, and a prison ministry. It also provides food and clothing to needy people through a program known as Abigail Pantry. Victory Chapel is not a corporation and it does not operate for profit. John filed an assumed name for Victory Chapel Ministries. In 1995, Carolyne began the ministry known as Victory Warriors Drill and Dance Academy to strengthen children and families. Victory Warriors serves children from the age of six through seventeen and the majority of the children are from single parent families living below the poverty level. It is an after-school program and children are referred through schools and law enforcement. It provides tutoring for children who require it and children who are doing well in school can participate in drill, the team leadership program, or the fine arts department. It also has a program called Court One which allows children to do community service through Victory Warriors. Victory Warriors is not a corporation and it does not operate for profit. Project Change El Paso is the fiscal agent for Victory Warriors. Victory Warriors receives funding from a variety of sources and it has a number of community partners including the El Paso Sheriff's Department, the El Paso Police Department, the Victim's Council, El Paso Community College, the United States Holocaust Memorial Museum, and

Wounded Warriors. It also has a relationship with three El Paso schools and the El Paso Times.

Victory Chapel and Victory Warriors have been located in a strip mall in northeast El Paso since 2000. The Redics initially leased two units from Rhey and eventually occupied five units due to their ministries' growth. The leases, which were prepared by Rhey, identified the lessees as John or Carolyne Redic d/b/a Victory Chapel or Victory Warriors. In the latter part of 2007, the leases were about to expire but the Redics were concerned about the condition of the premises. They discussed their concerns with both Gordon Schuetz, the property manager, and Rhey before they signed new leases. The Redics were particularly concerned about the roof. Schuetz agreed that the roof was the lessor's responsibility and said it would be fixed. Nothing was immediately done but in March 2008 Rhey spoke with Carolyne because they had not signed a new lease. Carolyne discussed their concerns about the roof and asked if she would repair it. Rhey said that the roof was her responsibility and she would repair it. She also said she would look into their other concerns about the property. A short time later, Rhey had an electrician working on the property so the Redics believed that Rhey was going to make the repairs they had discussed and they executed the new leases in March 2008. Carolyne would not have signed the leases if Rhey had not promised to fix the roof. The roof was not repaired and Rhey did not have plans to do so.

One rainy day in July 2008, Carolyne heard the dance instructor and the children screaming. She ran into the building and saw that water was gushing through the electric outlets and the lights were "fluttering." Fearing that someone would get electrocuted, Carolyne made everyone exit the building. She talked to Schuetz the next day and he said that he was sorry they had not fixed the roof and he "thought we would be able to hold out." Two or three days later, it rained again and flooded additional portions of the buildings. The second rain caused even more

damage than the first. The Redics tried to save what they could, but they lost everything in the children's rooms and the pantry, including the food in the freezers because they had to cut the electricity. Furniture and musical equipment was also damaged. The Redics had to stay out of the buildings for about five weeks. They attempted to continue with the various programs in tents but the summer heat eventually forced them to cancel summer camp, the food bank, and a workshop. They also had to cancel a dance performance at the historic Plaza Theater because the children had no facilities where they could practice. This resulted in the loss of a grant from the Museum of Culture and the National Endowment for the Arts. The Redics also had to cancel prayer services, and consequently, they could not collect offerings. The Redics could not meet their financial obligations, including the rent on the property, for a period of time in 2008. Rhey eventually repaired the roof. The Redics filed suit against Rhey for breach of contract, statutory fraud, common-law fraud, and negligent misrepresentation. Rhey answered and filed a counterclaim for breach of contract. The jury found in favor of the Redics on their negligent misrepresentation claims and found that Rhey had committed statutory fraud with respect to Carolyne, but found there was no common law fraud. The jury found against the Redics and Rhey on the breach of contract claims. The jury awarded damages to the Redics d/b/a Victory Warriors and Victory Chapel for expenses and loss of use in the amount of $28,085.25 It awarded Carolyne damages in the amount of $87,500 for damage to her reputation and awarded John Redic $50,000 for damage to his reputation. The jury awarded attorney's fees to the Redics d/b/a Victory Warriors and Victory Chapel in the total amount of $60,000 for preparation and trial, and additional amounts in the event of an appeal to the Court of Appeals and the Texas Supreme Court. The trial court rendered judgment on the verdict. Rhey appeals raising thirty-eight issues.

## LIABILITY FINDINGS

In Issues 1 through 3, Rhey challenges the legal and factual sufficiency of the evidence supporting the jury's liability findings.

### Standard of Review

On appeal, a legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidences establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Stanley Works v. Wichita Falls Independent School District*, 366 S.W.3d 816, 828 (Tex.App.--El Paso 2012, pet. filed). When conducting a legal sufficiency review, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 830. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

When the appellant challenges the factual sufficiency of an adverse finding on which the other party had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Escalante v. State Office of Risk Management*, 355 S.W.3d 341, 345 (Tex.App.--El Paso 2011, no pet.); *Texas Property & Casualty Guaranty Association v. National American Insurance Company*, 208 S.W.3d 523, 542 (Tex.App.--Austin 2006, pet. denied). We will consider, weigh, and examine all of the evidence in the record, both in support of, and contrary to, the finding. *Escalante*, 355 S.W.3d at 345; *Insurance Network of*

*Texas v. Kloesel*, 266 S.W.3d 456, 470 (Tex.App.--Corpus Christi 2008, pet. denied). The jury's findings will be set aside only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Escalante*, 355 S.W.3d at 345.

*Breach of Contract and Common Law Fraud*

In her first issue, Rhey attacks the sufficiency of the evidence to support the Redics' breach of contract theory of liability.[1] Similarly, she argues in a portion of Issue 3 that the evidence is insufficient to prove common law fraud.[2] The jury made negative findings on these two theories of liability and the Redics have not brought a cross-appeal challenging the negative findings. Consequently, these theories of liability do not form a basis for the judgment. Issue 1 and this portion of Issue 3 are overruled.

*Negligent Misrepresentation*

In Issue 2, Rhey challenges the sufficiency of the evidence supporting any damages awarded to either of the Redics for negligent misrepresentation. The elements of a negligent misrepresentation cause of action are:

1. the defendant made a representation to the plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest;

2. the defendant supplied false information for the guidance of others;

3. the defendant did not exercise reasonable care or competence in obtaining or communicating the information;

4. the plaintiff justifiably relied on the representation; and

5. the defendant's negligent misrepresentation proximately caused the plaintiff's injury.

---

[1] Issue 1 states: "The evidence is legally and factually insufficient to support any damages awarded to either Appellee for the breach of contract claim."

[2] Issue 3 states: "The evidence is legally and factually insufficient to support any damages awarded to Carolyne Redic for a fraud, common law or statutory, cause of action."

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W.3d 842, 845 (Tex.App.--El Paso 2012, no pet.). The type of false information contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.--Houston [14th Dist.] 1999, pet. denied); *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289, 294 (Tex.App.--El Paso 1992, writ denied).

Appellant argues that the evidence is insufficient because Rhey's representation that she would repair the roof is nothing more than a promise of future conduct. The Redics respond that the sufficiency of the evidence must be measured by the jury instruction actually given because Rhey did not object that it permitted the jury to find a negligent misrepresentation based on a false promise. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)(stating that when a jury instruction is submitted without objection, the sufficiency of the evidence to support the verdict is measured by that instruction). The trial court submitted Question No. 3 to the jury without objection:

> Did Ellen E. Rhey d/b/a Rhey Properties make a negligent misrepresentation on which Carolyne Redic and John E. Redic, Individually and d/b/a Victory Warriors Drill and Dance Academy and Victory Chapel Ministries justifiably relied?
>
> Negligent misrepresentation occurs when:
>
> (a) a party makes a misrepresentation in the course of his business or in a transaction in which he or her [sic] has a pecuniary interest;
>
> (b) the representation supplies false information for the guidance of others in their business; and
>
> (c) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.
>
> Answer 'Yes' or 'No.'

The jury answered "Yes" as to each of the Redics d/b/a Victory Warriors Drill and Dance Academy and Victory Chapel Ministries. The Redics are correct that the court's charge did not instruct the jury that negligent misrepresentation occurs only where the defendant makes a misstatement of existing fact rather than a promise of future conduct. Rhey did not object to the charge on this ground. Accordingly, we must measure sufficiency of the evidence by the charge actually given. There is ample evidence that Rhey represented to the Redics that the roof would be repaired when she did not intend to do so. We conclude that the evidence is both legally and factually sufficient to prove that Rhey provided false information to the Redics.

Rhey next argues that the element of reliance was not submitted to the jury but Question No. 3 asked whether Rhey made a misrepresentation on which the Redics justifiably relied. The evidence showed that the Redics were concerned about the condition of the property and were aware that the roof needed to be repaired. The leases expired at the end of 2007 and the Redics did not want to enter into new leases unless their concerns about the property's condition were addressed. Carolyne and John spoke to Rhey and Schuetz and Rhey told Carolyne that she would repair the roof. When Carolyne saw that work was being done on the property she believed that Rhey intended to make the repairs and they signed the new leases. Carolyne specifically testified that she would not have signed the lease if Rhey had not represented to her that she would fix the roof. This evidence is legally and factually sufficient to support the jury's finding that the Redics justifiably relied on Rhey's representation.

Rhey also contends that the evidence is insufficient to prove causation. It is undisputed that Rhey did not repair the roof as promised and the property flooded following heavy rains. This evidence is both legally and factually sufficient to prove that the misrepresentation was the cause-in-fact of the Redics' damages. Issue 2 is overruled.

*Statutory Fraud*

In the remaining portion of Issue 3, Rhey contends that the evidence is insufficient to support the jury's findings related to statutory fraud. Citing Section 27.01(a)(1) of the Texas Business and Commerce Code, Rhey asserts that a statutory fraud claim cannot be based on a promise to perform a future act. This argument is without merit. Section 27.01 provides that:

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

   (1) false representation of a past or existing material fact, when the false representation is

      (A) made to a person for the purpose of inducing that person to enter into a contract; and

      (B) relied on by that person in entering into that contract; or

   (2) false promise to do an act, when the false promise is

      (A) material;

      (B) made with the intention of not fulfilling it;

      (C) made to a person for the purpose of inducing that person to enter into a contract; and

      (D) relied on by that person in entering into that contract.

TEX.BUS.&COMM.CODE ANN. § 27.01(a)(2)(West 2009). While Section 27.01(a)(1) addresses a false representation of a past or existing material fact, Section 27.01(a)(2) permits a party to base a statutory fraud act on a false promise to do an act.

Appellant next argues that the jury's finding of statutory fraud is inconsistent with the jury's finding that Rhey complied with the contract. The court's charge asked the jury in Question No. 1 to determine whether the Redics and Rhey agreed that Rhey would repair the roof. The jury found that the parties had such an agreement but they answered "no" to Question

No. 2 which asked whether she failed to comply with the agreement. Rhey asserts that the jury's finding that she complied with the agreement is inconsistent with the jury's finding that she made the promise to repair the roof with the intention of not fulfilling it. The Redics respond that the jury's failure to find a breach of the contract does not equate to an affirmative finding that she complied with the contract. We agree. The jury's answer to Question No. 2 represents only a refusal by the jury to find from a preponderance of the evidence that Rhey breached the agreement to repair the roof and it means that the Redics failed to carry their burden of proof on their breach of contract claim. *See Sterner v. Marathon Oil Company*, 767 S.W.2d 686, 690 (Tex. 1989). The failure to find that Rhey breached the contract is not a finding that she complied with the contract. *Id*. Consequently, the non-finding on the breach of contract issue is not inconsistent with the jury's finding that she did not intend to fulfill her promise to repair the roof.

Finally, Rhey contends that there is insufficient evidence to prove that she promised to repair the roof or she made the promise with the intention of not fulfilling it. The jury was free to believe Carolyne's testimony that Rhey told her she would repair the roof. Rhey made this promise in March 2008 but had not caused the roof repairs to be done prior to the heavy rains which occurred in July 2008. Immediately after the property flooded, Schuetz apologized and told Carolyne that, "I thought we would be able to hold out from doing this." Schuetz admitted at trial that there were no plans to repair the roof prior to July 2008. This evidence permitted the jury to draw an inference that Rhey made the promise with the intention of not fulfilling it. We conclude that the evidence is legally and factually sufficient to support the verdict on statutory fraud. Issue 3 is overruled.

**DAMAGES AND ATTORNEY'S FEES**

In Issues 4 through 13, Rhey attacks the awards of damages and attorney's fees.

*Expenses, Loss of Use, and Lost Time*

In Issues 4, 5, 6, 9, 10, and 11, Rhey first argues that there is no evidence that John or Carolyne sustained any damages in their individual capacities for expenses sustained in the past, loss of use, and lost time. She contends that the evidence shows only that damages were instead sustained by Victory Chapel or Victory Warriors. Rhey makes a related argument in Issues 14 and 15. The evidence at trial established that Victory Chapel and Victory Warriors are not corporations or separate entities but are assumed business names of the Redics. The Redics filed suit individually and d/b/a Victory Warriors and Victory Chapel. Rhey's first argument is without merit.

Rhey also contends that the Redics cannot recover damages for expenses sustained in the past, loss of use, or lost time because only actual damages can be recovered in a statutory fraud case. Section 27.01 provides that a person who commits statutory fraud is liable to the person defrauded for "actual damages." TEX.BUS.&COMM.CODE ANN. § 27.01(b). The statute does not define actual damages, so we look to the common law for guidance. *Swinnea v. ERI Consulting Engineers, Inc.*, 236 S.W.3d 825, 835-36 (Tex.App.--Tyler 2007), *rev'd on other grounds,* 318 S.W.3d 867 (Tex. 2010). Actual damages are those damages recoverable under common law. *Arthur Andersen & Company v. Perry Equipment Corporation*, 945 S.W.2d 812, 816 (Tex. 1997). At common law, actual damages are either "direct" or "consequential." *Id.* Texas recognizes two measures of direct damages for fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. *Hawkins v. Walker*, 233 S.W.3d 380, 391-92 (Tex.App.--Fort Worth 2007, no pet.), *citing Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*,

960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received. *Hawkins*, 233 S.W.3d at 392. The defrauded party is also entitled to recover special damages for other pecuniary losses proximately caused by the misrepresentation. *Id.* Rhey's contention that the measure of damages is limited to the benefit of the bargain measure is without merit.

Rhey next argues that the evidence is insufficient to support the damages awards because the evidence is speculative since the Redics relied on "guesstimates" and figures "pulled out of a hat." The Redics concede that some of the components of the damage calculation were estimates but Carolyne had the documents to support the figures. The trier of fact is given broad discretion to award damages within the range of evidence presented at trial. *Powell Electrical Systems, Inc. v. Hewlett Packard Company*, 356 S.W.3d 113, 126 (Tex.App.--Houston [1st Dist.] 2011, no pet.). Damages must be established with reasonable certainty, not mathematical precision. *O and B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex.App.--Houston [14th Dist.] 2009, pet. denied); *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 890 (Tex.App.--Dallas 2004, pet. denied). If the fact of damages has been established, then the inability to calculate the exact amount of damages is not fatal. *O and B Farms*, 300 S.W.3d at 422. If the best available evidence affords a reasonable basis for the jury to calculate damages, then recovery cannot be denied because the exact amount of damages cannot be ascertained. *Id.*

The Redics presented evidence regarding the cost of the ministry being closed for a period of time, the cost of relocating classes, broken and damaged equipment, cleaning expenses, destroyed food and clothing, excessive electric and water bills attributable to the damage, and the loss of workshop and performance revenue. The total amount of expenses was $30,601 and the

jury awarded a total of $28,085.25 for expenses and loss of use. We conclude that the evidence of damages was not speculative or a mere "guesstimate" and the Redics established the amount of damages with reasonable certainty. Issues 4, 5, 6, 9, 10, and 11 are overruled.

*Injury to Reputation*

In Issues 7 and 12, Rhey maintains that neither of the Redics can recover damages for injury to reputation because they failed to prove the elements of a defamation claim. Rhey has not cited any authority in support of her argument that the Redics were required to prove defamation in order to recover damages for injury to reputation in connection with a fraud claim. Damages for injury to reputation caused by tortious conduct can be recovered. *See Beneficial Personnel Services of Texas, Inc. v. Rey*, 927 S.W.2d 157, 173 (Tex.App.--El Paso 1996), *vacated pursuant to settlement*, 938 S.W.2d 717 (Tex. 1997)(holding that damages for injury to credit reputation recoverable in fraud suit). Issues 7 and 12 are overruled.

*Attorney's Fees*

In Issues 8 and 13, Rhey challenges the award of attorney's fees. Rhey first argues that the evidence is legally insufficient to support the award because the testimony of the Redics' expert, Richard Bischoff, was conclusory. Bischoff is an El Paso attorney familiar with reasonable rates for attorneys in El Paso County. He reviewed the contents of the file, including the docket sheet, the pleadings, the depositions, and discovery. After considering the difficulty of the case, the experience, reputation, and experience of counsel, and other factors, Bischoff offered his expert opinion that a hourly rate of $275 to $325 would be appropriate and reasonable in El Paso County and that 200 hours would be necessary for prosecution of the case for a total fee of $55,000 to $65,000. Bischoff's testimony was not conclusory.

Rhey next contends that attorney's fees should not have been awarded because the Redics

did not recover on their breach of contract claim and attorney's fees are not available for negligent misrepresentation. Attorney's fees are available for statutory fraud under Section 27.01 of the Texas Business and Commerce Code. *See* TEX.BUS.&COMM.CODE ANN. § 27.01(e). We have already determined that the jury's findings made with respect to statutory fraud under Section 27.01(a)(2) are supported by the evidence.

Finally, Rhey maintains that attorney's fees should not have been awarded because the Redics have not "incurred" any attorney's fees. The Redics' counsel agreed to represent them for whatever fees were awarded by the jury. Bischoff discussed this type of fee arrangement, which he referred to as a conditional fee, and he contrasted it with a contingent fee. In his opinion, counsel was entitled to be awarded attorney's fees based on a higher hourly rate because he had accepted the risk that the jury might award zero attorney's fees. Rhey has not cited any authority in support of her assertion that attorney's fees cannot be awarded when an attorney has this type of arrangement with his clients and we are aware of none. Issues 8 and 13 are overruled.

### STANDING AND CAPACITY TO SUE

In Issues 14 and 15, Rhey complains that John and Carolyne lacked standing or capacity to sue as individuals because they appeared only as representatives of Victory Chapel and Victory Warriors. She first argues that Victory Chapel and Victory Warriors are corporations and the Redics lack standing to sue individually for damages to those corporations.

A plaintiff must have both standing and capacity to bring suit. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 847 (Tex. 2005); *Dakil v. Lege*, --- S.W.3d ----, 2012 WL 5247300 at *2 (Tex.App.--El Paso 2012, no pet. h.). Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome, whereas

capacity is a procedural issue addressing the personal qualifications of a party to litigate. *Dakil*, 2012 WL 5247300 at *1. "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Dakil*, 2012 WL 5247300 at *1, *quoting Nootsie, Ltd. v. Williamson County Appraisal District*, 925 S.W.2d 659, 661 (Tex. 1996). A challenge to who owns a claim raises the issue of capacity, not standing. *Dakil*, 2012 WL 5247300 at *2; *Prostok v. Browning*, 112 S.W.3d 876, 921 (Tex.App.--Dallas 2003), *rev'd in part on other grounds*, 165 S.W.3d 336 (Tex. 2005).

Rule 79 requires the petition to state the names of the parties. TEX.R.CIV.P. 79. The petition reflects on its face that the Redics filed suit individually and d/b/a Victory Chapel and Victory Warriors. The Redics specifically alleged in the petition that they operate Victory Warriors and Victory Chapel "as assumed names." The evidence established that Victory Chapel and Victory Warriors are not corporate entities, but are the Redics' assumed business names. Carolyne testified that Victory Chapel is not a corporation. The Redics filed an assumed name certificate for Victory Chapel. Likewise, Victory Warriors is not incorporated and the Redics filed an assumed name certificate for it. Prior to the facts giving rise to this case, Carolyne began the process of incorporating Victory Warriors but she dropped it because Project Change El Paso offered to serve as the fiscal agent. The record reflects that John and Carolyne have standing to sue individually.

Rhey next argues that the Redics' petition did not allege that they operate Victory Warriors and Victory Chapel under assumed names. This argument raises the issue of capacity. *See Dakil*, 2012 WL 5247300 at *2. As we have already noted, the Redics specifically alleged in the petition that they operate Victory Warriors and Victory Chapel "as assumed names."

Finally, Rhey points to Carolyne's testimony that she was appearing at trial in a representative capacity on behalf of Victory Warriors and Victory Chapel and argues that it proves the Redics lack capacity to sue individually. During cross-examination, Rhey's counsel asked Carolyne whether she was seeking money as an individual and she responded: "I'm here in my individual capacity representing Victory Warriors Drill and Dance Academy and Victory Chapel Ministries." We agree with the Redics that Carolyne's testimony described the purpose of her appearance at trial and she did not purport to describe her "capacity" as that term is used legally. The determination of capacity is made by looking at the pleadings and the relevant and material evidence. The pleadings and the evidence conclusively established that the Redics operated Victory Warriors and Victory Chapel as assumed names, and therefore, they had capacity to sue individually. Issues 14 and 15 are overruled.

## EVIDENTIARY RULINGS

In Issues 16 through 30, Rhey challenges several evidentiary rulings. Evidentiary rulings are committed to the sound discretion of the trial court. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). Accordingly, we review a trial court's evidentiary determinations under an abuse-of-discretion standard. *National Liability and Fire Insurance Company v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). Even if the trial court abused its discretion in admitting certain evidence, reversal is only appropriate if the error was harmful, i.e., it probably resulted in an improper judgment. *Nissan Motor Company, Ltd. v. Armstrong*, 145 S.W.3d 131 (Tex. 2004); Tex.R.App.P. 44.1.

*Exclusion of Tax Returns*

In Issue 16, Rhey contends that the trial court erred by not allowing her to review the Redics' tax returns and offer them into evidence. Although the issue seems to indicate that Rhey is complaining about a discovery ruling and an evidentiary ruling, she has not provided any briefing on a discovery ruling. Consequently, we will limit our review to the alleged exclusion of evidence. *See* TEX.R.APP.P. 38.1(i)(requiring the brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

The Redics filed a motion in limine which the trial court considered prior to the beginning of trial. The Redics requested that Rhey's counsel refrain from addressing certain topics without first approaching the bench so that the admissibility of evidence could be determined outside of the jury's presence. The trial court granted the motion in limine on several topics including the amount of benefits received by John Redic from the Veteran's Administration. At this same hearing, Rhey asked the court to address the non-production of certain documents. Shortly before trial, Rhey served a subpoena duces tecum on the Redics' counsel requiring him to produce the Redics' income tax returns and documents related to John Redic's military retirement. The Redics objected to both requests on the ground that the evidence was not relevant to any issue in the case and did not produce them. After hearing the parties arguments regarding the relevance of the documents, the court noted that it had already granted the motion in limine on the VA benefits. The court subsequently ruled by stating: "Well, I grant it as to the income taxes, and as to retirement benefits . . . ." Rhey's counsel then asked that the income tax returns be sealed and marked as Court's Exhibit 1 so they could be made part of the appellate record.

The court's ruling is confusing because the issue before the court was whether the Redics

should be required to produce the documents. We do not interpret the trial court's ruling as indicating that it was granting Rhey's request to produce the documents because everyone present seemed to understand that the income tax returns and records related to John's VA benefits were not going to be produced. At the same time, the court did not sustain the Redics' relevance objection or purport to exclude the evidence. Instead, it appears that the court was refusing to order the Redics produce the income tax returns and records related to John's VA benefits. Rhey has not, however, briefed that issue on appeal.

To the extent that the court's ruling could be construed as granting a motion in limine, such a ruling does not preserve error. *Wyler Industrial Works, Inc. v. Garcia*, 999 S.W.2d 494, 511 (Tex.App.--El Paso 1999, no writ). To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex.App.--El Paso 2002, no pet.). Rhey did not preserve the issue presented on appeal.

Even assuming that Rhey preserved the issue, she has failed to show that the trial court abused its discretion. Once an objection is asserted, the party seeking discovery of income tax returns has the burden of showing relevance and materiality. *In re Sullivan*, 214 S.W.3d 622, 624 (Tex.App.--Austin 2006, orig. proceeding); *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex.App.--San Antonio 1994, orig. proceeding). Federal income tax returns are not material if the same information can be obtained from another source. *In re Sullivan*, 214 S.W.3d at 624-25; *El Centro del Barrio*, 894 S.W.2d at 780.

Rhey argues that the tax returns were admissible to show the capacity of the Redics. Both of the Redics testified at trial and the assumed name certificates were admitted into evidence. Rhey has failed to show that the tax returns had information relevant to capacity that

she could not have gotten from another source.

Rhey also contends that the income tax returns were relevant to show that the Redics did not suffer any losses in connection with Victory Chapel or Victory Warriors. Rhey has failed to show that the tax returns would have shown anything different than the evidence offered at trial on the subject. The trial court would not have abused its discretion by excluding this evidence. Issue 16 is overruled.

*Expert Testimony on Attorney's Fees*

In Issue 17, Rhey asserts that the trial court erred by admitting the testimony of Richard Bischoff as an expert witness on attorney's fees because he was not named as an expert witness ninety days before the end of the discovery period as required by TEX.R.CIV.P. 195.2(a). The Redics respond that the trial court correctly determined that the failure to disclose Bischoff as an expert on the issue of attorney's fees did not unfairly surprise or prejudice Rhey.

Rule 195.2(a) provides that unless otherwise ordered by the court, a party must designate experts testifying for a party seeking affirmative relief by the later of two dates: Thirty days after the request is served or ninety days before the end of the discovery period. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, unless the court finds that (1) there was good cause for the failure to timely disclose or (2) the failure will not unfairly surprise or prejudice the other parties. TEX.R.CIV.P. 193.6(a). The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. TEX.R.CIV.P. 193.6(b). While the trial court has discretion to determine whether a party has met its burden under this rule, a finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record. *Id.*; *Morales v. Rice*,

--- S.W.3d ----, 2012 WL 2499004 at *8 (Tex.App.--El Paso 2012, no pet.); *Texas Municipal League Intergovernmental Risk Pool v. Burns*, 209 S.W.3d 806, 817 (Tex.App.--Fort Worth 2006, no pet.).

The Redics included a request for attorney's fees in their original petition filed on April 8, 2010.  The trial in this case began on September 10, 2010, only five months after the Redics filed suit.  The Redics disclosed the witness on August 10, 2010, thirty-one days before trial commenced.  Under these circumstances, the trial court did not abuse its discretion by finding a lack of unfair surprise or unfair prejudice.  *See City of El Paso v. Parsons*, 353 S.W.3d 215, 229 (Tex.App.--El Paso 2011, no pet.)(in action brought under the Whistleblower Act, trial court did not abuse its discretion by implicitly finding good cause and no unfair surprise under Rule 193.6 where plaintiff filed application for attorney's fees and costs after jury verdict was received; the original petition showed that attorney's fees were being sought as part of the relief requested, and the court, to cure any alleged surprise, provided parties six weeks to conduct additional discovery before hearing on the plaintiff's application for attorney fees); *Beard Family Partnership v. Commercial Indemnity Insurance Company*, 116 S.W.3d 839, 850 (Tex.App.--Austin 2003, no pet.)(admitting expert testimony on attorney fees despite untimely designation of expert until thirty days before trial was not abuse of discretion; the trial court found good cause to allow the expert to testify because the failure to timely designate was because of inadvertence of counsel, and there was no unfair surprise or prejudice because the surety's pleadings contained the request for attorney fees from the lawsuit's inception).  Issue 17 is overruled.

### Carolyne's Testimony about Activities of Victory Warriors

In Issue 18, Rhey argues that the trial court erred by admitting Carolyne's testimony about the activities of Victory Warriors.  The Redics respond that the issue is not preserved.  We

agree. To preserve this issue for review on appeal, Rhey was required to make the trial court aware of her complaint by making a timely and specific objection. *See* TEX.R.APP.P. 33.1(a). Carolyne testified at length about the activities of Victory Warriors, but Rhey made only two relevance objections during the course of that testimony and she did not obtain a running objection. Consequently, she failed to preserve her complaint. *See Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007)(in a hearing on motions for sanctions against attorney arising out of medical negligence case, attorney waived, by failing to establish a running exception, any objection to relevance of testimony regarding attorney's conduct in other cases; attorney requested a running objection as to relevance without specifying what he intended the objection to cover, trial court overruled the objection and instructed counsel to make objections as necessary, and counsel thereafter made occasional objections but failed to object to much testimony about attorney's conduct in other cases). Issue 18 is overruled.

*Admission of Program Documenting John as Pastor*

Issue 19 concerns the admission of Plaintiff's Exhibit 1, a written program memorializing the installation of John Redic as pastor of Victory Chapel. Rhey contends that the trial court erred by overruling her relevance objection.

Evidence is relevant, and therefore admissible, if it has any tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401, 402; *Service Corporation International v. Guerra*, 348 S.W.3d 221, 237-38 (Tex. 2011). To determine relevancy, the court must look at the purpose for offering the evidence. *Service Lloyds Insurance Company v. Martin*, 855 S.W.2d 816, 822 (Tex.App.--Dallas 1993, no writ). There must be some logical connection either directly or by inference between the fact offered and the

fact to be proved. *Service Lloyds*, 855 S.W.2d at 822.

Plaintiff's Exhibit 1 was part of a series of exhibits and testimony showing the Redics' background and their activities at the premises prior to the flooding. When Rhey objected to the exhibit as being collateral and irrelevant, the Redics specifically offered it to rebut assertions made by Rhey's counsel during opening argument that the Redics were operating Victory Chapel and Victory Warriors in a fraudulent manner and as part of a ruse to obtain money from the community for personal benefit. We conclude that the trial court did not abuse its discretion by finding this evidence relevant to rebut the defensive theory raised during open argument. Even if the trial court abused its discretion by admitting the program, there is no evidence it resulted in the rendition of an improper judgment. TEX.R.APP.P. 44.1. Issue 19 is overruled.

*Admission of Photographs*

In Issues 20 through 26, Rhey complains about the admission of seven photographs depicting the interior and exterior of the premises. One of those photographs, Plaintiffs' Exhibit 3C, also depicts children seated in a classroom. The Redics respond that Rhey waived her complaints regarding Exhibits 3E, 3H, 3I, and 3J because she failed to object. We agree. In fact, our review of the record shows that Rhey expressly stated that she *did not* object to the admission of Exhibits 3E, 3H, 3I, and 3J. *See* TEX.R.APP.P. 33.1(a)(1). Accordingly, Issues 22, 24, 25, and 26 are overruled.

Rhey did raise a relevance objection to Exhibits 3C, 3D, and 3G. As noted above, Exhibit 3C depicts a classroom with several children seated at tables. Carolyne explained that this room also contains a galley where snacks are prepared. Exhibit 3D is a photograph of two large metal shelving units containing dozens of canned goods as well as cereal and other boxed food items. Carolyne testified that the photograph shows part of the food bank. Exhibit 3G is a

- 22 -

close-up of what appears to be a large painting or mural on a wall in the chapel. The photographs depicted the appearance of the premises prior to the flooding and showed how the premises were being used by the Redics. These photographs are relevant because they provide the jury with background evidence. Further, the photographs of the classroom and food pantry are relevant to the issue of damages as part of the Redics' losses was based on the expense of relocating classes and the loss of food. The trial court did not abuse its discretion by admitting Exhibits 3C, 3D, and 3G. Issues 20, 21, and 23 are overruled.

*The PowerPoint Presentation*

In Issue 27, Rhey argues that the trial court abused its discretion by admitting Plaintiffs' Exhibit 14 over her relevance objection. Exhibit 14 is a PowerPoint presentation showing the history and operations of Victory Warriors. The trial court addressed the admissibility of Exhibit 14 outside of the presence of the jury. The Redics' counsel began by explaining the purpose of Exhibit 14. Counsel stated that one of the central issues was how the misrepresentation and breach of contract impacted the operations of Victory Warriors and Victory Chapel. He explained that the jury had to understand the nature of the operation to fully appreciate how the operations would have been disrupted by the flood and resulting damages. He also offered it to counter the statements made by Rhey's counsel during opening argument that the jury would see that Carolyne was using the children and pocketing 90 percent of the money going to Victory Warriors. The court overruled several objections to specific slides, but sustained one objection and required a portion of the PowerPoint to be deleted. In the jury's presence, Rhey objected to Exhibit 14 on the ground that it is "collateral matter." The trial court overruled that objection.

The court did not abuse its discretion by overruling Rhey's objection to the PowerPoint presentation because it assisted the jury to understand the nature of the Victory Warriors

operation. It also tended to rebut the assertions made by Rhey's counsel during opening statement that Victory Warriors was not a legitimate operation. Issue 27 is overruled.

*Testimony of District Judge Linda Chew*

In Issue 28, Rhey contends that the trial court erred by permitting the Honorable Linda Chew, Judge of the 327th District Court, to testify because her testimony was not relevant. Rhey does not identify any particular portion of Judge Chew's testimony as being inadmissible. She instead argues generally that Judge Chew should not have been allowed to testify at all. Rhey did not preserve her complaint because she failed to object at trial. *See* TEX.R.APP.P. 33.1(a). Issue 28 is overruled.

*Testimony of District Attorney Jaime Esparza*

In Issue 29, Rhey challenges the admission of the testimony of District Attorney Jaime Esparza. Rhey argues on appeal that Esparza should not have been permitted to testify at all.

After the Redics called Esparza as a witness, Rhey objected on the ground that his testimony did not "go to any issue in this case." The trial court overruled that objection, adding: "I will find out if he does have relevant testimony." Esparza testified that he was familiar with Carolyne and Victory Warriors through his office's community outreach. Rhey lodged a relevance objection when the Redics' counsel asked Esparza to describe his office's community outreach. The trial court overruled that objection and Esparza testified briefly that his office engages in community outreach and works with community organizations, such as Victory Warriors, as part of an effort to reduce crime. Esparza went on to explain, without objection, that the District Attorney's office applies for funding for programs that his office operates. The majority of that funding comes from El Paso County and grants from the State of Texas and the federal government. The trial court overruled Rhey's relevance objection when Esparza testified

about the eligibility requirements for those grants as well as the monitoring of grant recipients. The Redics offered Esparza's testimony to rebut the defensive theory that the Redics had fraudulently obtained grant money for personal gain. Esparza's testimony, if believed by the jury, tended to rebut Rhey's assertions of fraud by the Redics. The trial court did not abuse its discretion by overruling Rhey's relevance objection and admitting Esparza's testimony. Issue 29 is overruled.

*Cumulative Error*

In Issue 30, Rhey argues that the trial court "erred in allowing so much irrelevant, collateral matter in the trial of the case." This amounts to a cumulative error issue based on the contentions raised in Issues 18 through 29.

A reviewing court may reverse a lower-court judgment under the cumulative-error doctrine when the record shows a number of instances of error, no one instance being sufficient to call for reversal, yet all the instances taken together may do so. *University of Texas at Austin v. Hinton*, 822 S.W.2d 197, 205 (Tex.App.--Austin 1991, no writ), *citing Sproles Motor Freight Lines, Inc. v. Long*, 140 Tex. 494, 168 S.W.2d 642, 645 (Tex. 1943). To show cumulative error, an appellant must show that, based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it. *Hinton*, 822 S.W.2d at 205. Because we have overruled Issues 18 through 29, there can be no cumulative error. *See Hinton*, 822 S.W.2d at 205. Issue 30 is overruled.

**CHARGE ERROR**

Rhey has raised four complaints of charge error. A trial court must submit questions, instructions, and definitions to the jury as are necessary to enable the jury to render a verdict. *See* TEX.R.CIV.P. 278. The trial court enjoys considerable discretion in framing a jury charge

and is given broad latitude to determine the propriety of explanatory instructions and definitions. *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998); *Hatfield v. Solomon*, 316 S.W.3d 50, 62 (Tex.App.--Houston [14th Dist.] 2010, no pet.). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Echostar Satellite L.L.C. v. Aguilar*, --- S.W.3d ----, 2012 WL 4910018 at *10 (Tex.App.--El Paso 2012, no pet. h.).

To determine whether an alleged error in the jury charge is reversible, we consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Development Corporation v. Republic of Texas Savings Association*, 710 S.W.2d 551, 555 (Tex. 1986); *Texas Mutual Insurance Company v. Boetsch*, 307 S.W.3d 874, 880 (Tex.App.--Dallas 2010, pet. denied). We reverse the trial court only when the error in the charge amounted to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment. TEX.R.APP.P. 44.1(a)(1); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). Charge error is generally considered harmful if it relates to a contested, critical issue. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

### Act of God

In Issue 31, Rhey argues that the trial court should have submitted a question in the charge asking the jury to determine whether the Redics' damages were caused by an act of God. The trial court provided the jury with an act of God instruction in the form requested by Rhey. A party is not entitled to a separate jury finding on an "act of God" defense because it is an inferential rebuttal issue. *Scott v. Atchison, Topeka & Santa Fe Railway, Company*, 572 S.W.2d

273, 279-80 (Tex. 1978); TEX.R.CIV.P. 277. The trial court properly submitted the issue in the charge as an instruction. Issue 31 is overruled.

*Identities of the Plaintiffs*

In Issue 32, Rhey maintains that the trial court erred by not submitting a question asking the jury to determine "[w]hich part(ies), if any, are seeking recovery as Plaintiffs in this lawsuit?" Rhey's proposed question would have asked the jury to answer by placing "yes" or "no" next to (a) John Redic, individually; (b) Carolyne Redic, individually; (c) Victory Warriors Drill and Dance Academy, a nonprofit corporation; (d) Victory Chapel Ministries, a nonprofit corporation; and (e) Project Change El Paso, a nonprofit corporation.

Rhey's brief does not cite any authority in support of her assertion that the trial court erred by not submitting this question and we are aware of none. The question of who are the parties to the case is a legal question determined primarily by reviewing the pleadings. *See* TEX.R.CIV.P. 79. To the extent Rhey's argument is related to the standing and capacity to sue issues raised in Issues 14 and 15, both issues are legal questions which would not be submitted to the jury. Standing is typically addressed in a plea to the jurisdiction, motion for summary judgment, or motion to dismiss. *See Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Green Tree Servicing, LLC v. Woods*, --- S.W.3d ----, 2012 WL 3222360 at *4 (Tex.App.--Houston [1st Dist.] 2012, no pet.); *Haddy v. Caldwell*, 355 S.W.3d 247, 250 (Tex.App.--El Paso 2011, no pet.). A party who wishes to contest the opponent's lack of capacity to sue must do so in a verified plea in abatement. *Bluebonnet Farms, Inc. v. Gibraltar Savings Association*, 618 S.W.2d 81, 83 (Tex.Civ.App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.).

We have already determined that the John and Carolyne filed suit individually d/b/a

Victory Warriors and Victory Chapel and they had both standing and capacity to sue. The jury charge is consistent with the pleadings and refers to the Redics by their individual names and assumed business names. The trial court did not abuse its discretion by refusing to submit this question to the jury. Issue 32 is overruled.

*New and Independent Cause*

In Issue 33, Rhey complains that the trial court refused to submit an instruction on new and independent cause. She argues that the Redics' damages were caused by rain, not by her failure to repair the roof.

In *Dillard v. Texas Electric Co-operative*, 157 S.W.3d 429, 432 (Tex. 2005), the Texas Supreme Court explained that when defendants blame an occurrence on someone or something other than themselves, the Texas Pattern Jury Charges provide multiple alternatives, including new and independent cause and act of God. *Id.* The new-and-independent-cause instruction is available if the occurrence is caused by someone else later. *Id.* The act-of-God instruction applies where the occurrence is caused by "the violence of nature." *Id.* The purpose of these instructions is to advise the jurors, in the appropriate case, that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it. *Id.*, *citing Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995). Giving multiple instructions on every possible rebuttal inference has the potential to skew the jury's analysis in the other direction. *Dillard*, 157 S.W.3d at 433.

Rhey did not argue that some other person was responsible for the Redics' injuries. She had the ability to argue, through the act of God instruction, that the Redics' injuries were caused by rain and she was not responsible for those injuries. The trial court did not abuse its discretion

by refusing to give the jury a new and independent cause instruction.  Issue 33 is overruled.

*Instruction on Redics' Defenses to Rhey's Breach of Contract Claim*

In Issue 38, Rhey asserts that there is no evidence to support submission of the Redics' defenses to her breach of contract claim.  Question 8 asked the jury whether the Redics d/b/a Victory Warriors and Victory Chapel failed to comply with their lease agreement when failure to comply was not excused.  The question included instructions on the Redics' affirmative defenses of failure of consideration and equitable estoppel.

The failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal.  TEX.R.CIV.P. 274; TEX.R.APP.P. 33.1; *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003).  Rhey objected to the jury in writing and made several objections to Question 8, but all of those objections relate to Rhey's arguments about standing and capacity to sue.  She did not object to the instructions on the affirmative defenses of failure of consideration and equitable estoppel.  Because she failed to preserve these complaints about the charge, Issue 38 is overruled.  *See Fish v. Dallas Independent School District*, 170 S.W.3d 226, 230 (Tex.App.-- Dallas 2005, pet. denied).

## CONFLICT IN THE JURY FINDINGS

In Issues 34 and 35, Rhey maintains that there is an irreconcilable conflict in the jury's answers.  The Redics counter that Rhey failed to preserve error.  We agree.

Rule 295 of the Texas Rules of Civil Procedure provides that if the jury's answers to the questions are in conflict, the trial court must instruct the jury of the nature of the problem, give the jury additional instructions as necessary, and allow the jury to further deliberate.  TEX.R.CIV.P. 295.  The trial court must be made aware of the conflict before the jury is discharged because, once the jury is discharged, "a conflict in the jury's answers cannot be

reformed." *Beltran v. Brookshire Grocery Company*, 358 S.W.3d 263, 268 (Tex.App.--Dallas 2011, pet. denied), *quoting Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 109 (Tex.App.--Eastland 1992, writ denied). Under Rule 33.1(a), a party is required to raise its complaint to the trial court by a "timely request, objection, or motion" in order to preserve error. Consequently, a Rule 295 objection must be made before the jury is discharged. *See Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex. 1986); *Lundy v. Masson*, 260 S.W.3d 482, 495 (Tex.App.--Houston [14th Dist.] 2008, pet. denied). Rhey failed to preserve Issues 34 and 35 for our review because she did not object to the allegedly conflicting jury answers prior to the jury being discharged. Issues 34 and 35 are overruled.

### CLOSING ARGUMENT AND PERSONAL ATTACKS

In Issue 36, Rhey complains about closing argument and what she characterizes as "personal attacks" on her attorney.[3] Rhey first contends that counsel for the Redics made an incurable closing argument by urging the jury to award between $300,000 and $500,000 in damages. Rhey asserts there was no evidence to support such an award.

The court instructed the jury to consider loss of the benefit of the bargain, expenses, loss of use of the premises, lost time, damage to reputation, and mental anguish. The Redics' attorney argued during closing argument that the jury, in determining the damages, should consider what the Redics had lost and he acknowledged that some of the damages are subjective. He urged the jury to consider that the Redics had lost years of hard work and the opportunity to provide for the community they love. Counsel then suggested that the jury should award between $300,000 and $500,000 in damages. The jury awarded damages in the total amount of $175,585.25 for expenses, loss of use, lost time, and damage to reputation. Appellate complaints of improper jury argument must ordinarily be preserved by timely objection and request for an

---

[3] In the body of her brief, Rhey has included two separate issues both numbered as "Issue No. 36."

- 30 -

instruction that the jury disregard the improper remark. TEX.R.APP.P. 33.1; *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). A complaint of incurable argument may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial. *Phillips*, 288 S.W.3d at 883; TEX.R.CIV.P. 324(b)(5). Rhey did not object to the argument at trial but she preserved the issue by raising it in her motion for new trial. Denial of a motion for new trial is reviewed under the abuse of discretion standard. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010).

Rhey offers no authority to support her assertion that counsel's closing argument is improper or incurable. There are only rare instances of incurable harm from improper argument. *Phillips*, 288 S.W.3d at 883; *Standard Fire Insurance Company v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979). The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument. *Phillips*, 288 S.W.3d at 883. Even assuming that counsel's argument was improper, it does not rise to the level of incurable argument. *See e.g., Circle Y of Yoakum v. Blevins*, 826 S.W.2d 753, 758 (Tex.App.--Texarkana 1992, writ denied)(argument found to be incurable where attorney accused opposing counsel of manufacturing evidence); *Texas Employers Insurance Association v. Guerrero*, 800 S.W.2d 859, 866-67 (Tex.App.--San Antonio 1990, writ denied)(argument appealing to prejudice against a party's ethnicity found to be incurable).

Rhey next argues that the trial court erred by not granting a mistrial when Redics' counsel made personal attacks against her counsel on two occasions during trial. Rhey's attorney, Anthony Aguilar, testified during trial in support of Rhey's request for an award of

attorney's fees. During cross-examination, the Redics' attorney asked Mr. Aguilar whether he had ever been suspended by the State Bar. The attorneys approached the bench and Mr. Aguilar objected to the Redics' attempt to introduce a prior conviction without first giving him notice. The trial court instructed Redics' counsel to only ask what the sanction was and not to go into the conviction. In the jury's presence, Mr. Aguilar testified that he voluntarily surrendered his license for three years. Rhey never voiced any objection in the trial court that this amounted to a personal attack on her counsel. Consequently, she has waived this part of Issue 36. *See* TEX.R.APP.P. 33.1.

In the third portion of her argument under Issue 36, Rhey contends that Redics' counsel made an improper attack on her attorney by stating during closing argument that "the amount of attorney fees for Rhey are a rip off." During final argument, the Redics' counsel argued during rebuttal as follows:

> The suggestion has been made that John and Carolyne Redic are ripping off the community. Ladies and gentlemen, let me be clear, I am proud to represent the Redics, Victory Warriors, and Victory Chapel Ministries. I think that the Redics are remarkable people. I think they are heroic people. I don't think they are good people, I think they are great people.
>
> I am proud to stand next to the people that turned the Devil's Triangle into the Angel's Triangle. I wished at times that they might be more sophisticated. I wished at times that they might have more resources to help this community. I wished that they maybe had not been as trusting.
>
> But it is wrong, it is unjust, it is ironic for the people that put them in this predicament to suggest that they are ripping anybody off. Not from the people that start off with a $10,000 debt and convert it into $140,000.[4] Who's ripping who off? Not with a lawyer that comes to this courtroom and tells you he wants $150,000. Who is ripping who off?
>
> Rhey did not object to the argument when it occurred. In her motion for new trial, Rhey

---

[4] Counsel's comments referred to the damages sought by Rhey for non-payment of rent. As a result of the flood damage, the Redics did not make rent payments for approximately five months in 2008, for a total of approximately $10,000. Rhey sued the Redics under the leases seeking approximately $140,000 in late fees and penalties.

included a section on "incurable jury argument." but she did not address this portion of closing argument. Consequently, Rhey failed to preserve the issues. For these reasons, Issue 36 is overruled.

## DOUBLE RECOVERY OF ATTORNEY'S FEES

In Issue 37, Rhey argues that the judgment includes a double recovery of attorney's fees because fees were awarded to each of the Redics. A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *Waite Hill Services, Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). The judgment is consistent with the jury's verdict which awarded attorney's fees in the amount of $30,000 to Carolyne Redic d/b/a Victory Warriors and Victory Chapel and $30,000 to John Redic d/b/a Victory Warriors and Victory Chapel. The judgment does not compensate either John or Carolyne twice for the same loss. Issue 37 is overruled.

Having overruled each issue presented on appeal, but having reformed the judgment to reflect the correct assumed name of Victory Chapel Ministries, we affirm the judgment of the trial court as so modified.

March 20, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

- 33 -